IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RONNIE PHILLIPS, et al., )
)
                Plaintiffs, )
)
vs. ) CIVIL NO. 06-412-GPM
)
SEARS ROEBUCK & COMPANY, et al., )
)
                Defendants. )

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

This is "a nightmare of a class action." *Smith v. Sprint Communications Co., L.P.*, 387 F.3d 612, 613 (7th Cir. 2004).

### BACKGROUND

Ninety-seven plaintiffs seek recovery from ten defendants engaged in the manufacture and distribution of lawnmowers. They claim defendants misrepresented the horsepower produced by the lawnmowers and conspired with each other to deceive consumers. The third amended class action complaint (*see* Doc. 10, Exhibits 2-9) asserts federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, together with statutory and common-law claims under the laws of forty-four states. Plaintiffs also seek certification of the RICO claims on behalf of a nationwide class of purchasers who, from January 1, 1994, to the present, purchased lawnmowers manufactured or distributed by defendants containing gas combustible engines having up to 30 horsepower, as well as certification of "subclasses" of such purchasers under the state laws of forty-four states.

Jurisdiction is asserted on the basis of 28 U.S.C. § 1331 and 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). For the following reasons, the RICO claims asserted in the third amended complaint are dismissed, as well as all state-law claims, other than those arising under Illinois law. The motion to approve a class wide settlement between plaintiffs and defendant MTD Products, Inc. ("MTD") is also denied.

## ANALYSIS

**1.     Motions to Dismiss**.

In evaluating dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court accepts all well-pleaded allegations in a plaintiff's complaint as true. *See Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the allegations of a complaint, not to determine the merits of a case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Id*. (internal citations omitted).

Turning first to the matter of the legal sufficiency of plaintiffs' RICO claims, 18 U.S.C. § 1962 provides, in pertinent part, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a RICO plaintiff must show the '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). *See also LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 393 (7th Cir. 1995); *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir. 1994). An "enterprise" for RICO purposes means "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "pattern of racketeering activity" means "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" means certain acts that are chargeable and punishable as felonies under state law or that are indictable under specific federal criminal statutes, as set out in an exclusive list in RICO's definitions, *see* 18 U.S.C. § 1961(1).

In general, "allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of [Federal Rule of Civil Procedure] 9(b), which requires a plaintiff to plead all averments of fraud with particularity." *Slaney v. International Amateur Athletic Found.*, 244 F.3d 580, 597 (7th Cir. 2001). "Accordingly, a RICO plaintiff must, at a minimum, describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Id*. "Moreover, in a multiple defendant case,

Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). *See also Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (dismissing RICO claim for "lump[ing] all the defendants together" and failing to specify "who was involved in what activity").

The Seventh Circuit holds that "[a] RICO complaint must identify the enterprise." *Richmond*, 52 F.3d at 645. "While a RICO enterprise can be formal or informal, some type of organizational structure is required." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). *See also Richmond*, 52 F.3d at 645 ("The hallmark of an enterprise is a structure."). More specifically, a RICO enterprise must have "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making," with "goals separate from the predicate acts themselves." *Stachon*, 229 F.3d at 675 (internal citations omitted). Although an enterprise can be an informal association-in-fact, "[t]he hallmark of an enterprise is structure," and the goals of the enterprise must be separate from the predicate acts themselves. *Richmond*, 52 F.3d at 645 (quotation omitted). *See also Stachon*, 229 F.3d at 676 (noting that plaintiffs cannot establish structure by explaining what an enterprise supposedly does). An association-in-fact enterprise requires continuity and the differentiation of roles, as well as a common purpose of engaging in a course of conduct. *See Richmond*, 52 F.3d at 645. *See also Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004) (noting that a common purpose is an "essential ingredient" of any association-in-fact enterprise).

A RICO enterprise must consist of more than a group of people who get together to commit a pattern of racketeering activity. *See Richmond*, 52 F.3d at 644. The enterprise must be "distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity

may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). Also, in this Circuit, to establish statutory distinctness, plaintiffs must establish that each RICO person actively participated or knowingly acquiesced in the alleged scheme, or unwittingly permitted legitimate business operations to become a conduit of criminal activity. Bare legal and factual distinctness is insufficient. A plaintiff must prove the role played by the legally distinct person was non-incidental to bringing about (or concealing) a pattern of racketeering activity.

"The prototypical RICO case is one in which a person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997) (citations omitted). "The [RICO person] must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality." *Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998).

Here, the plaintiffs have alleged enough to conclusively take their case outside of the paradigm. It is impossible to imagine that the enterprises as alleged wrested control of the long established legitimate businesses for the purpose alleged. The businesses could easily have accomplished what is alleged absent the associations-in-fact, and the latter by no means controlled

the former. So what is left is an alleged a conspiracy to commit fraud. The allegations are also technically insufficient.

Plaintiffs have identified four separate association-in-fact enterprises: 1) The OPEI Enterprise: "The OPEI Enterprise is an association-in-fact consisting of defendants Honda, Briggs & Stratton, Deere, Electrolux, Kawasaki, Kohler, Tecumseh, MTD and Toro…." Complt., ¶243; 2) The PLTF Enterprise: "The Power Labeling Task Force Enterprise is an association-in-fact consisting of defendants Honda, Briggs & Stratton, Deere, Electrolux, Kawasaki, Kohler, Tecumseh, MTD and Toro…." Complt., ¶248; 3) The Eagle Group/SAE Enterprise: plaintiffs allege that The Eagle Group/SAE Enterprise is a RICO "is an association-in-fact consisting of defendants Briggs & Stratton, Kohler and Tecumseh." Complt., ¶259; and 4) The Craftsman Exclusive Enterprise: "The Craftsman Exclusive Enterprise is an association-in-fact consisting of defendants Briggs & Stratton, Kohler, Electrolux and Sears." Complt., ¶253.

The sum total of the allegations involving the OPEI association-in-fact enterprise are that: (1) its members include nine of the ten defendants (and an unknown number of unnamed others); (2) these defendants are part of an "ongoing and continuing organization"; (3) they supposedly have the "common purpose of deceiving consumers"; and (4) they have overstated horsepower, concealed the same, used the third-party Outdoor Power Equipment Institute to amend the Society of Automotive Engineers' ("SAE") horsepower testing standards, and concealed that too. This does not make an "enterprise" under RICO.

Plaintiffs also allege that the same nine defendants (and unknown others) found in the OPEI enterprise created the Power Labeling Task Force ("PLTF") association-in-fact. But they fail to

allege even the statutory minimum of two predicate acts of racketeering for the Craftsman Exclusive enterprise and the SAE enterprise. *See* 18 U.S.C. § 1961(5).

With respect to the Craftsman Exclusive enterprise, the plaintiffs allege that on April 9, 2002, defendant Sears "transmitted via the interstate wires . . . [a] press release . . . to the consuming public at large." (Complt. ¶ 264(h).) The only other allegation of misconduct in support of the Craftsman Exclusive enterprise "pattern" is that *this same press release* "is currently transmitted continuously to consumers via Sears website." (*Id.* ¶ 264(I).) Because plaintiffs cannot "double-count" conduct to fulfill the predicate act requirement, this alleged pattern fails to meet even the minimum requirements of § 1961(5).

The claim that the SAE enterprise constituted an association-in-fact must be dismissed for the same reasons. Plaintiffs fail to identify an enterprise -- that is, they fail to allege that the association-in-fact has a structure apart from the conspiracy itself. *Bachman v. Bear, Stearns, & Co.*, 178 F.3d 930, 932 (7th Cir. 1999); *Jennings*, 910 F.2d at 1441. Likewise, there is no explanation as to the roles of each of the three engine manufacturers in this "SAE enterprise," or the requisite decision making structure. *See e.g. Jennings*, 91 F.2d at 1440; *Richmond*, 52 F.3d at 645. These deficiencies are fatal.

Plaintiffs allege that (1) the members of the PLTF enterprise participated in two conference calls in May 2004 (*see* Complt. (¶¶ 264(l),(p)), and that (2) a third party (the Engine Manufacturers' Association) sent a series of correspondence to the members. (*See* Complt. (¶¶ 264(d), (k), (m)-(o), (q)-(s).) The correspondence included meeting agenda, meeting minutes, and schedules of meetings connected to the two conference calls or to one of two alleged face-to-face meetings of the PLTF

enterprise. *Id.* The in-person meetings occurred on April 20 and June 2, 2004. (Complt. ¶¶ 264(g) &(k).)

All of these alleged Conspiracy Acts concerning the PLTF enterprise occurred *over little more than a one month time period*, from April 20, 2004, until June 4, 2004. *Id*. To establish the pattern requirement of a RICO claim, a plaintiff must show that defendant committed at least two predicate acts of racketeering within a ten-year period. 18 U.S.C. § 1961(5); *Vicom, Inc. v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 779 (7th Cir. 1994). Because the RICO statute was enacted out of concern for long-term criminal conduct, rather than sporadic fraudulent acts, a RICO plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Vicom*, 20 F.3d at 779 (emphasis in original) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The relationship part of this test requires that the predicate acts be "committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *Vicom*, 20 F.3d at 779 (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986)). The continuity portion of the test is both a closed-ended and open-ended concept, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Vicom*, 20 F.3d at 779 (quoting *H.J., Inc.*, 492 U.S. at 241).

In contrast to closed-ended continuity, a plaintiff may establish open-ended continuity regardless of the duration of the conduct. *Vicom*, 20 F.3d at 782. Open-ended continuity is present when "(1) 'a specific threat of repetition' exists, (2) 'the predicates are a regular way of conducting [an] ongoing legitimate business,' or (3) 'the predicates can be attributed to a defendant operating

as part of a long-term association that exists for criminal purposes.'" *Id.* (quoting *H.J., Inc.*, 492 U.S. at 242-43).

Plaintiffs fail to allege open-ended continuity. "[S]chemes which have a clear and terminable goal have a natural ending point [and] cannot support a finding of any specific threat of continuity that would constitute open-ended continuity." *Vicom*, 20 F.3d at 782. Here, the alleged goal of the PLTF, to amend the SAE J1940 horsepower labeling standard, is alleged to have been accomplished. (Complt. ¶ 148.) Because the plaintiffs have not alleged any predicate acts within the past two years and have pled no facts to support any ongoing criminal threat, they cannot establish open-ended continuity either.

In order to demonstrate closed-ended continuity, a plaintiff must show that the related predicate acts occurred over a substantial period of time. *Id.* To this end, courts consider: (1) the length of time over which the predicate acts were committed; (2) the number and variety of predicate acts; (3) the number of victims; (4) the presence of separate schemes; and (5) the occurrence of distinct injuries. *Id.* at 780 (quoting *Morgan*, 804 F.2d at 975); *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1049 (7th Cir.1998). The courts apply these factors "with an eye toward achieving a natural and commonsense result, recognizing that Congress was concerned in RICO with long-term criminal conduct." *Vicom*, 20 F.3d at 780 (internal quotation marks omitted).

The first factor, duration, "is perhaps the closest thing we have to a bright-line continuity test...." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir.1992). In the instant case, the alleged enterprise involved a single scheme which spanned only eight months (March 2003 to November 2003).

In *Midwest Grinding*, while the Seventh Circuit acknowledged that it had not established a *per se* duration requirement, it held that a time frame of less than nine months did not satisfy the durational aspect of closed-ended continuity, citing an expansive number of Seventh Circuit cases where a duration of less than two years was insufficient to establish closed-ended continuity. *Id.* (collecting cases). The Seventh Circuit summarized the matter in *Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir.1992), stating that an eight-month, single victim, single scheme RICO claim does not constitute a pattern. The plaintiffs in this case pled precisely that same type of "short-term, closed-ended fraud," and, therefore, the most significant factor – duration – cuts against them.

Still, no single *Morgan* factor, regardless of its outcome, is necessarily dispositive. *Morgan*, 804 F.2d at 976. But four of the five factors, including the most significant (duration), militate against a finding of closed-ended continuity, and the fifth factor alone will not save the day. Accordingly, these claims are not the type of "long-term criminal conduct" Congress was concerned with when it enacted RICO, and dismissal is the "natural and commonsense result." *See Vicom*, 20 F.3d at 779.

**2.      Class Certification.**

The complaint asserts 177 separate state law claims against each defendant. This is not a good start and foreshadows the unlikelihood of class treatment. The Seventh Circuit has warned repeatedly against the certification of unwieldy multistate classes because the difficulties inherent in applying the laws of numerous states defeats both predominance and manageability. *See, e.g., In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018-21 (7th Cir. 2002) (decertifying a nationwide class action alleging, inter alia, claims for breach of express and implied warranties: "Because these

In *Midwest Grinding*, while the Seventh Circuit acknowledged that it had not established a *per se* duration requirement, it held that a time frame of less than nine months did not satisfy the durational aspect of closed-ended continuity, citing an expansive number of Seventh Circuit cases where a duration of less than two years was insufficient to establish closed-ended continuity. *Id.* (collecting cases). The Seventh Circuit summarized the matter in *Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir.1992), stating that an eight-month, single victim, single scheme RICO claim does not constitute a pattern. The plaintiffs in this case pled precisely that same type of "short-term, closed-ended fraud," and, therefore, the most significant factor – duration – cuts against them.

Still, no single *Morgan* factor, regardless of its outcome, is necessarily dispositive. *Morgan*, 804 F.2d at 976. But four of the five factors, including the most significant (duration), militate against a finding of closed-ended continuity, and the fifth factor alone will not save the day. Accordingly, these claims are not the type of "long-term criminal conduct" Congress was concerned with when it enacted RICO, and dismissal is the "natural and commonsense result." *See Vicom*, 20 F.3d at 779.

**2.      Class Certification.**

The complaint asserts 177 separate state law claims against each defendant. This is not a good start and foreshadows the unlikelihood of class treatment. The Seventh Circuit has warned repeatedly against the certification of unwieldy multistate classes because the difficulties inherent in applying the laws of numerous states defeats both predominance and manageability. *See, e.g., In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018-21 (7th Cir. 2002) (decertifying a nationwide class action alleging, inter alia, claims for breach of express and implied warranties: "Because these

claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."); *Isaacs v. Sprint Corp.*, 261 F.3d 679, 681-82 (7th Cir. 2001) (class certification was inappropriate in a suit by owners of land adjacent to railroad rights-of-way against railroad companies and a long-distance telephone company that bought sub-easements from the railroads alleging that the rights-of-way belonged to the landowners; the suit involved "different conveyances by and to different parties made at different times over a period of more than a century . . . in 48 different states [and] the District of Columbia . . . which have different laws regarding the scope of easements," so that individualized issues of law and fact predominated over any common issues); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677-78 (7th Cir. 2001) (on interlocutory appeal, vacating and remanding for further consideration a district court's decision to grant class certification: "A nationwide class in what is fundamentally a breach-of-warranty action, coupled with a claim of fraud, poses serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification."); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995).

There is no way this Court could or should try make sense out of the welter of non-Illinois state claims pitched by the plaintiffs in this case. The Seventh Circuit has put an end to most multistate consumer class cases for the reasons stated, and this case is a poorer candidate than those cited above. The non-Illinois state claims will have to be litigated separately in local courts that are familiar with the appropriate underlying state law.

## CONCLUSION

In light of the foregoing, the RICO claims are **DISMISSED with prejudice**, and all non-Illinois state claims are **DISMISSED without prejudice** to refiling them in another jurisdiction. The

motion to certify a settlement class is **DENIED**, and the proposed settlement with defendant MTD is **REJECTED**. Such a settlement would provide nothing to the putative class and would foreclose the legitimate claims of class members.

Plaintiffs are granted leave to file, on or before **May 30, 2008**, a fourth amended complaint which re-pleads the Illinois claims only.

The motion by defendant MTD to dismiss its cross-claims against defendant Kohler (Doc. 195) is **GRANTED**. Said cross-claims are **DISMISSED without prejudice**.

Finally, Plaintiffs' motion for a status conference (Doc. 197) is **DENIED**. The Court will hold a status, if the parties so request, after an amended complaint is filed and defendants have filed their responsive pleadings.

**IT IS SO ORDERED.**

DATED: 5/8/08


s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge